**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **SKELETON KEY SECURITY SYSTEMS, INC.,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**NEUTRON HOLDINGS, INC. d/b/a LIME,**<br><br>***Defendant.*** | **Civil Action No. 7:26-cv-00320**<br><br>**JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement where Plaintiff Skeleton Key Security Systems, Inc. ("Skeleton Key") makes the following allegations against Defendant Neutron Holdings, Inc., d/b/a Lime ("Lime" or "Defendant").

**BACKGROUND**

1. Skeleton Key developed a groundbreaking retail access and security platform that transformed how consumers interact with high-value products. Before Skeleton Key's innovations, retailers often faced a difficult choice: either keep products secured and inaccessible to customers, or make them available for hands-on engagement at the risk of theft and loss. Skeleton Key's patented technology solved this long-standing problem by enabling secure, controlled, and trackable customer access to individual products and services through its use of digital keys and connected locking systems. The result was a scalable platform that simultaneously enhanced product security, improved customer engagement, and generated valuable consumer insights, creating a new model for retail interaction.

2. Skeleton Key provides a one-of-a-kind sales system that allows service providers to both secure high value products and make those products available for direct customer

engagement. Its inventors recognized that prior security and access systems suffered from critical deficiencies. Those systems required human assistance to unlock secured articles, demanded upfront payment before granting access, or failed to provide a scalable digital mechanism for granting temporary access to physical articles while maintaining security. Prior art systems such as Nordstrom (U.S. Pub. No. 2013/0132279) required payment before unlocking, creating friction and limiting flexible access models. But the Skeleton Key Asserted Patents solved these problems through specific computer-implemented technical architectures including digital key generation and assignment systems, server-based verification of predetermined conditions without requiring payment, portable electronic device communication with locking units via wireless protocols, event-based assignment and un-assignment of digital keys, and role-based access control enabling differentiated permissions for different user types. Together, the Asserted Patents merged product security, brand engagement, and consumer intelligence in a novel way.

3. Because the platform is category-agnostic, service providers can deploy Skeleton Key's system across a wide range of retail environments, such as beauty and electronics, travel retail, and individual scooters on the streets of Austin, Texas, and more. The system individually secures high-theft products while still allowing them to remain available for direct customer engagement. The platform is scalable and can operate in both unattended and attended retail environments, providing customer authentication through a cloud-based key system, product tracking, and integrated inventory and payment processing. As a result, Skeleton Key stands at the forefront of retail and micromobility's next evolution.

4. Lime's shared electric vehicle access system directly implements the technological solutions claimed in the Skeleton Key Asserted Patents. Lime's system uses a cloud-based server infrastructure that generates digital authentication credentials—functioning as digital keys—which

are assigned to a user's portable electronic device (smartphone) upon verification that the user satisfies predetermined conditions, enabling the user's smartphone to alter integrated smart locks on Lime vehicles between locked and unlocked states via Bluetooth communication. This architecture mirrors the patented digital key system that provides authenticated users with digitally-mediated access to secured articles without requiring payment for the article itself.

5. Lime publicly acknowledges that its digital vehicle access system is central to its business model and competitive differentiation. Lime describes itself as "the world's largest shared electric vehicle company" that provides "convenient and reliable short-term rentals of electric bikes and scooters at an affordable price in more than 280 cities in nearly 30 countries on five continents." Lime's own documentation and publicly available materials confirm that its shared vehicle access system uses the technological approaches claimed in the Skeleton Key Asserted Patents, including server-generated digital authentication credentials that enable smartphone-based unlocking of smart-locked vehicles, verification of predetermined conditions (valid account, identity authentication, financial condition) before granting access, digital key un-assignment upon ride completion, and role-based access differentiating between consumer riders and operational personnel.

6. Lime's commercial success in the shared micromobility business is built directly on implementing the patented digital access technologies without authorization. Lime operates in hundreds of cities across dozens of countries and generated $886.7 million in revenue in 2025. Every ride on a Lime vehicle necessarily practices the claimed methods and systems of the Skeleton Key Asserted Patents: a user requests access through the Lime app, the system verifies predetermined conditions, a digital key is assigned and provided to the user's smartphone, the

smartphone causes the locking unit to transition from locked to unlocked, and the digital key is un-assigned upon ride completion.

7. The Skeleton Key Asserted Patents are not directed to abstract ideas but to specific technological architectures for digitally-mediated physical access control. The claimed systems require specific hardware (locking units, servers with processors, portable electronic devices) and software (digital key generation, assignment algorithms, condition verification logic, wireless communication protocols) operating in concert to provide a concrete technical solution to a concrete technical problem. The digital key system—with its generation, conditional assignment, provision to portable electronic devices, and event-based un-assignment—represents a specific, unconventional technical implementation that improves the functionality of physical security systems by decoupling the access-granting event from the payment event.

8. Skeleton Key files this suit to protect its valuable intellectual property rights.

**PARTIES**

9. Plaintiff Skeleton Key Security Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1202 Tilton Road, Suite 1, Northfield, NJ 08225.

10. Defendant Neutron Holdings, Inc., d/b/a Lime ("Lime"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 85 2nd Street, Suite 100, San Francisco, California 94105. Lime is registered to do business in the State of Texas and maintains a regular place of business in this district at 5910 Techni Center Drive, Austin, Texas 78721. Lime may be served through its registered agent, CCS Global Solutions, Inc., 3610-2 North Josey Lane, Suite 223, Carrollton, Texas 75007, or CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

11. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

12. This Court has personal jurisdiction over Lime because Lime maintains a place of business within this judicial district and has a continuous, systematic, and substantial presence within this judicial district, including by offering for sale and selling infringing products and services in this judicial district, and by committing acts of patent infringement in this judicial district. Lime, directly or through intermediaries, has committed acts within the district giving rise to this action and is present in and transacts and conducts business in and with residents of this district and the State of Texas. Lime regularly conducts and solicits business in, engages in other persistent courses of conduct in, and derives substantial revenue from goods and services provided to residents of this district and the State of Texas. Lime has committed acts of infringement in this district and the State of Texas by making, using, selling, offering for sale, and/or importing products and services within this district, including without limitation products and services made by practicing the claimed methods of the Asserted Patents.

13. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Lime has committed acts of infringement in this district, has employees who work in the district, and has a regular and established place of business in this district, including at least at 5910 Techni Center Drive, Austin, Texas 78721. The Techni Center facility serves as Lime's Austin operational hub and warehouse, from which Lime supports the deployment, servicing, and maintenance of scooters operating throughout the region. The facility is staffed by Lime's mechanical and office personnel and serves as a centralized base for Lime's Austin-area operations. *See*

https://www.kxan.com/news/local/austin/exclusive-look-inside-limes-scooter-warehouse-and-the-1180-scooters-inside/.

14. Each of the foregoing locations is a physical place in this district, is a regular and established place of business, and is the place of Lime—Lime leases or occupies the premises, holds them out as its own, and staffs them with its own employees. *See In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). In addition, Lime deploys, operates, maintains, and derives revenue from its fleet of vehicles throughout this district.

**THE SKELETON KEY ASSERTED PATENTS**

15. U.S. Patent No. 9,367,865 (the "'865 Patent"), which is attached as Exhibit A, was filed on July 3, 2013 and issued on June 14, 2016. The '865 Patent is entitled "System and Method for Providing Consumers with Access to an Article While Preventing Theft Thereof."

16. U.S. Patent No. 11,783,647 (the "'647 Patent"), which is attached as Exhibit B, was filed on December 21, 2018 and issued on October 10, 2023. The '647 Patent is entitled "System and Method for Securing, Releasing, and Managing Inventory."

17. U.S. Patent No. 12,223,783 (the "'783 Patent"), which is attached as Exhibit C, was filed on September 27, 2023 and issued on February 11, 2025. The '783 Patent is entitled "System and Method for Digitally Providing Access to an Article."

18. Collectively, the '865 Patent, the '647 Patent, and the '783 Patent are the "Skeleton Key Asserted Patents."

19. The Skeleton Key Asserted Patents share a common inventive lineage. The '647 Patent claims priority to U.S. Provisional Application No. 62/608,683, filed December 21, 2017. The '783 Patent is a continuation of the application that issued as the '647 Patent. The '865 Patent claims priority to U.S. Provisional Application No. 61/667,684, filed July 3, 2012.

20. Skeleton Key owns all substantial rights to the Skeleton Key Asserted Patents, including the right to sue and recover damages for all infringement thereof including past damages. Skeleton Key and any licensees have complied with the requirements of 35 U.S.C. § 287 with respect to the Skeleton Key Asserted Patents to the extent those requirements apply. In the alternative, and to the extent any asserted claim is a method claim, the marking requirement of § 287 does not apply. All right, title, and interest in and to each of the Skeleton Key Asserted Patents was assigned from each of the named inventors thereof to Skeleton Key Security Systems LLC, Plaintiff's predecessor entity, and each such assignment is recorded with the United States Patent and Trademark Office: the '865 Patent at Reel 052557, Frame 0793 (recorded May 4, 2020); the '647 Patent at Reel 047842, Frame 0449 (recorded December 21, 2018); and the '783 Patent at Reel 065039, Frame 0783 (recorded September 27, 2023). In each of those recorded assignments, Skeleton Key Security Systems LLC was inadvertently identified as "Skeleton Key Systems, LLC" as the result of a scrivener's error, and each of the named inventors has since executed a written amendment confirming that the omission of the word "Security" was an error and that Skeleton Key Security Systems LLC was at all times the intended and actual assignee.

21. On February 24, 2021, Skeleton Key Security Systems LLC converted into a Delaware corporation pursuant to Section 265 of the Delaware General Corporation Law, and the name of the resulting corporation is Skeleton Key Security Systems, Inc. Under 8 Del. C. § 265(f), the converting limited liability company and the resulting corporation are, for all purposes of the laws of the State of Delaware, deemed to be the same entity, and all rights, privileges, powers, and property of the converting entity, including all right, title, and interest in and to the Skeleton Key Asserted Patents, vested in Skeleton Key Security Systems, Inc. upon the conversion by operation of law, without any further act, deed, or instrument of transfer. Plaintiff Skeleton Key Security

Systems, Inc. is therefore the same entity as, and the successor in title to, the assignee identified in the recorded assignments, and has held all right, title, and interest in and to each of the Skeleton Key Asserted Patents at all times since February 24, 2021, including on the date this Complaint was filed.

**SKELETON KEY'S TECHNOLOGICAL INNOVATIONS**

22. The Skeleton Key Asserted Patents claim concrete technological solutions to specific technical problems in physical access control systems. The '865 Patent addresses the problem of providing consumers with access to secured articles using their portable electronic devices, by analyzing consumer data (including financial account data) to determine risk level and directing the anti-theft system to transition from a secured state to an unsecured state without charging the consumer—enabling "try before you buy" while maintaining security.

23. The '647 and '783 Patents build upon this foundation by claiming a digital key system in which a server generates a digital key associated with an article or locking unit, assigns the digital key to a user upon a "first event" comprising the user's request for access, authentication of the user's identity, and verification that the user satisfies a predetermined condition—critically, without the first event comprising a payment for the article or an authorization of payment for the article. The digital key, when provided to the user's portable electronic device, enables the device to alter the locking unit between locked and unlocked states. Upon a "second event" (distinct from the first event), the digital key is un-assigned from the user, rendering it no longer usable for unlocking.

24. The Skeleton Key Asserted Patents do not claim abstract ideas or well-known business practices merely implemented on generic computers. The claims recite specific technological architectures including: digital key generation algorithms associating keys with

specific articles and locking units; server-based verification pipelines assessing predetermined conditions; wireless communication protocols between portable electronic devices and locking units; event-driven assignment and un-assignment logic providing temporal access control; role-based access differentiation; and machine-readable code scanning for initiating access requests. These are concrete technical implementations that constitute patent-eligible subject matter.

25. The Skeleton Key Asserted Patents are patent-eligible under 35 U.S.C. § 101. Under Alice step one, the claims are not directed to abstract ideas but to specific technological improvements in physical access control system functionality: digital key generation and management, conditional access granting through predetermined verification, wireless lock control, and event-driven key lifecycle management. These are concrete implementations that necessarily require computers, servers, wireless communication modules, and physical locking mechanisms to function. Under Alice step two, even if any limitation were construed as abstract, the claims contain inventive concepts: the digital key architecture that decouples access from payment was unconventional; the event-based assignment and un-assignment system was unconventional; the combination of identity authentication, condition verification, and digital key provisioning to a portable device for wireless lock control was unconventional. The claims focus on specific technical means and methods that improve physical access control technology, not on abstract end results.

**<u>THE ACCUSED INSTRUMENTALITIES</u>**

26. Lime operates a shared electric vehicle platform comprising the Lime mobile application (iOS and Android), Lime's cloud-based backend server infrastructure, and Lime's fleet of electric scooters and e-bikes equipped with integrated smart locks, Bluetooth connectivity, GPS

tracking, and QR code interfaces. Lime operates in hundreds of cities across dozens of countries, including throughout the State of Texas and within this judicial district.

27. As used herein, the "Accused Instrumentalities" comprise, individually and in combination: (i) Lime's cloud-based backend servers and the software they execute; (ii) the Lime rider application for iOS and Android, including the "app-less" App Clip and Instant App implementations and the SMS access path; and (iii) Lime's fleet of electric scooters, e-bikes, and gliders equipped with onboard cellular modems, Bluetooth Low Energy radios, GPS, machine-readable QR codes, and integrated locking hardware, including at least the Gen 3 and Gen 4 platforms, the "LimeLock" external cable lock, and the internal electronic wheel-immobilizing lock.

28. Lime's system operates as follows: Users download and install the Lime mobile application on their smartphones. Upon creating an account, users provide identity authentication credentials and register a valid payment method. When a user wishes to access a Lime vehicle, the user scans the QR code on the vehicle (or enters the vehicle's plate number), triggering a request for access. Lime's server verifies that the user satisfies predetermined conditions including a valid and active account, a verified payment method on file, no outstanding violations or suspensions, verified identity, and location within an authorized service zone. Upon verification, Lime's server generates and transmits digital authentication credentials (the digital key) to the user's smartphone, which then communicates with the vehicle's integrated smart lock via Bluetooth to alter the lock from the locked state to the unlocked state. The user does not pay for or authorize payment for the vehicle (the article) at the time of unlock—the per-minute ride fee is calculated and charged only after the ride concludes. When the user ends the ride, the digital key is un-assigned and the lock re-engages.

29. Lime's own User Agreement confirms the separation between the access event and the payment event. Lime states that it "may place a temporary hold on your debit/credit card account before you start a ride to verify your payment information is still valid and/or to verify your debit/credit card has the necessary funds to cover the fees incurred for that ride," and that such a "[p]re-authorization is not a charge to your account, it is a hold on those funds" that is later "released or reconciled with the actual charge." Lime User Agreement § 6.1 (last updated July 15, 2025) (attached hereto and incorporated herein as Exhibit D). Lime's application likewise informs riders that they "will only be charged after" the ride. A hold placed to verify that funds exist is a verification that the user satisfies a predetermined financial condition; it is not a payment for the vehicle, nor an authorization of payment for the vehicle.

30. Lime also fixes and discloses the price of access before the vehicle is released: "Before you start a ride, you will see the applicable fees (e.g., start/unlock fee, per minute fee, and/or minimum fee)." Lime User Agreement § 6.1. Lime's system therefore measures the user's available funds against an ascertainable price of the article at the time of the access request, and then releases the vehicle without charging that price.

31. Lime performs, or directs and controls the performance of, every step of each asserted method claim. Lime conditions a rider's receipt of the benefit of the Accused Instrumentalities—access to a Lime vehicle—on the rider's performance of the user-facing steps, including creating an account, registering a valid payment method, completing identity and age verification, and initiating the unlock request by scanning the vehicle's QR code or entering its plate number. Lime's User Agreement makes these prerequisites mandatory, stating that "[i]n order to use most aspects of the Services, you must register for and maintain an active personal user account, which requires a valid debit or credit card or other approved payment method." Lime

User Agreement § 4.1. Lime further establishes the manner and timing of that performance through its application user interface, its server-side validation logic, and its contractual terms. Lime is therefore liable for the performance of those steps as if it performed them itself. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc).

**COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 9,367,865**

32. Skeleton Key repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

33. On June 14, 2016, the ’865 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled “System and Method for Providing Consumers with Access to an Article While Preventing Theft Thereof.”

34. Skeleton Key is the owner of the ’865 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the ’865 Patent against infringers, and to collect damages for all relevant times.

35. Lime’s shared vehicle access system infringes at least Claims 1, 18, and 19 of the ’865 Patent. Lime’s system: (a) secures articles (scooters and e-bikes) in a secured state using an anti-theft system (integrated smart locks), the anti-theft system alterable between the secured state and an unsecured state; (b) receives, from a consumer’s portable electronic device (the user’s smartphone running the Lime app), consumer data relating to the consumer including financial account data; (c) analyzes the consumer data to determine the consumer’s risk level, including determining whether accounts associated with financial account data have available funds greater than or equal to the price of the article; and (d) directs the anti-theft system to transition from the secured state to the unsecured state upon the consumer’s risk level being approved—without charging the price of the article to the account.

36. Lime's anti-theft system corresponds to the architecture the '865 Patent describes: the security apparatus is the external cable lock and/or the internal electronic lock on each vehicle; the wireless communication device is the vehicle's onboard control unit, which carries a cellular modem and a Bluetooth Low Energy radio; and the server is Lime's cloud backend, which authorizes and commands the transition between the secured and unsecured states. The internal electronic lock satisfies the claim independently of any cable lock, because the '865 Patent expressly provides that the security apparatus "may also be software that restricts the full operation of the article" and "may be any physical device or properly programmed processor that restricts a consumer's full access" to the article.

37. Lime directly infringes at least Claims 1, 18, and 19 of the '865 Patent through its shared vehicle access system that receives consumer financial data, verifies sufficient funds through pre-authorization, and unlocks vehicles without charging the consumer at the time of access.

38. Lime has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least Claims 1, 18, and 19 of the '865 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

39. Lime has committed these acts of infringement without license or authorization.

40. Lime has induced and continues to induce infringement of at least Claims 1, 18, and 19 of the '865 Patent under 35 U.S.C. § 271(b). Lime has had knowledge of the '865 Patent at least as of the filing of this Complaint. With knowledge of the '865 Patent, Lime has actively induced end users to directly infringe at least Claims 1, 18, and 19 of the '865 Patent by:

(i) providing the Lime application to users with instructions on how to use the vehicle unlocking features that practice the claimed inventions; (ii) marketing and promoting the convenience of Lime's scan-to-unlock vehicle access system to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing digital access system; (iv) providing help documentation, tutorials, and support materials instructing users on how to locate and unlock Lime vehicles through the infringing system; and (v) encouraging users through notifications, emails, and in-app prompts to engage with the shared vehicle access system. Lime took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its vehicle access system.

41. By engaging in the conduct described herein, Lime has caused injury to Skeleton Key, and Skeleton Key has been damaged and continues to be damaged as a result thereof and Lime is thus liable to Skeleton Key for infringement of the '865 Patent, pursuant to 35 U.S.C. § 271.

42. As a direct and proximate result of Lime's infringement of the '865 Patent, Skeleton Key has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Skeleton Key for Lime's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

43. In addition, the infringing acts and practices of Lime have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Skeleton Key for which there is no adequate remedy at law, and for which Skeleton Key is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

44. Lime has had actual knowledge of the ’865 Patent at least as of the date when it was notified of the filing of this action. By the time of trial, Lime will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the ’865 Patent. Skeleton Key alleges that Lime’s post-filing infringement is willful.

45. Skeleton Key has been damaged as a result of the infringing conduct by Lime alleged above. Thus, Lime is liable to Skeleton Key in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT 2 – INFRINGEMENT OF U.S. PATENT NO. 11,783,647**

46. Skeleton Key repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

47. On October 10, 2023, the ’647 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled “System and Method for Securing, Releasing, and Managing Inventory.”

48. Skeleton Key is the owner of the ’647 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the ’647 Patent against infringers, and to collect damages for all relevant times.

49. Lime’s shared vehicle access system infringes at least Claims 1, 2, 4–8, and 10–19 of the ’647 Patent. For Claim 1, Lime operates a system for digitally providing access to an article (scooter/e-bike) comprising: a locking unit (integrated smart lock) configured to secure the article in a locked state and alterable between locked and unlocked states; and a server comprising a processor configured to generate a digital key associated with the article or locking unit that, when

provided to a user's portable electronic device (smartphone), enables the device to alter the locking unit between locked and unlocked states without the user paying for or authorizing payment for the article; assign the digital key upon a first event comprising the user initiating a request for access (QR code scan), authentication of the user's identity, and verification that the user satisfies predetermined conditions—where the first event does not comprise payment or authorization of payment; provide the digital key to the user's portable electronic device; and un-assign the digital key based on a second event (ride ending) that is different from the first event.

50. For Claim 7, Lime performs a method for digitally providing access to an article comprising: securing the article using a locking unit; generating a digital key; upon a first event, assigning the digital key and causing it to be provided to the user's portable electronic device; providing the digital key to enable unlocking; and un-assigning the digital key upon a second event.

51. Lime directly infringes at least Claims 1, 2, 4–8, and 10–19 of the '647 Patent through its shared vehicle access system that generates digital keys, assigns them upon user verification events, enables smartphone-based vehicle unlocking without payment, and un-assigns keys upon ride completion.

52. Lime has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) the aforementioned claims of the '647 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

53. Lime has committed these acts of infringement without license or authorization.

54. Lime has induced and continues to induce infringement of the ’647 Patent under 35 U.S.C. § 271(b). Lime has had knowledge of the ’647 Patent at least as of the filing of this Complaint. With knowledge of the ’647 Patent, Lime has actively induced end users to directly infringe at least the aforementioned claims by: (i) providing the Lime application and platform to users with instructions on how to use the digital vehicle access features that practice the claimed inventions; (ii) marketing and promoting the seamless unlock-and-ride experience of the Lime service to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing digital key system including QR code scanning and one-tap unlocking; (iv) providing help documentation, tutorials, and support materials instructing users on how to unlock and ride Lime vehicles; and (v) encouraging users through notifications, emails, and in-app prompts to access and ride Lime vehicles using the infringing digital key system. Lime took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its digital access system.

55. By engaging in the conduct described herein, Lime has caused injury to Skeleton Key, and Skeleton Key has been damaged and continues to be damaged as a result thereof and Lime is thus liable to Skeleton Key for infringement of the ’647 Patent, pursuant to 35 U.S.C. § 271.

56. As a direct and proximate result of Lime’s infringement of the ’647 Patent, Skeleton Key has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Skeleton Key for Lime’s past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

57. In addition, the infringing acts and practices of Lime have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and

irreparable harm and damage to Skeleton Key for which there is no adequate remedy at law, and for which Skeleton Key is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

58. Lime has had actual knowledge of the '647 Patent at least as of the date when it was notified of the filing of this action. By the time of trial, Lime will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '647 Patent. Skeleton Key alleges that Lime's post-filing infringement is willful.

59. Skeleton Key has been damaged as a result of the infringing conduct by Lime alleged above. Thus, Lime is liable to Skeleton Key in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT 3 – INFRINGEMENT OF U.S. PATENT NO. 12,223,783**

60. Skeleton Key repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

61. On February 11, 2025, the '783 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System and Method for Digitally Providing Access to an Article."

62. Skeleton Key is the owner of the '783 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '783 Patent against infringers, and to collect damages for all relevant times.

63. Lime's shared vehicle access system infringes at least Claims 1–9, 11–14, and 16–20 of the '783 Patent. For Claim 1, Lime operates a system for digitally providing access to an article comprising: a locking unit (smart lock) configured to secure the article (scooter/e-bike) in

a locked state, alterable between locked and unlocked states; and a server configured to generate a digital key associated with the article or locking unit that, when provided to the user's portable electronic device, enables the device to alter the locking unit between locked and unlocked states without the user paying for or authorizing payment for the article; upon a first event, assign the digital key to the user and cause it to be provided to the user's portable electronic device; wherein the first event comprises the user initiating a request for access (QR code scan) and verification that the user satisfies a predetermined condition; and wherein the first event does not comprise payment or authorization of payment for the article.

64. For Claim 7, Lime performs a method for digitally providing access to an article comprising: generating a digital key associated with the article or locking unit; upon a first event, assigning the digital key to the user and causing it to be provided to the user's portable electronic device to enable unlocking without payment; and providing the assigned digital key to enable the user's device to cause the locking unit to alter between locked and unlocked states.

65. Lime directly infringes at least Claims 1–9, 11–14, and 16–20 of the '783 Patent through its shared vehicle access system that generates digital authentication credentials, assigns them upon user verification, and enables smartphone-based vehicle unlocking without payment for the article.

66. Lime has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) the aforementioned claims of the '783 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

67. Lime has committed these acts of infringement without license or authorization.

68. Lime has induced and continues to induce infringement of the ’783 Patent under 35 U.S.C. § 271(b). Lime has had knowledge of the ’783 Patent at least as of the filing of this Complaint. With knowledge of the ’783 Patent, Lime has actively induced end users to directly infringe at least the aforementioned claims by: (i) providing the Lime application to users with instructions on how to scan QR codes and unlock vehicles using the digital key features that practice the claimed inventions; (ii) marketing and promoting the ease and convenience of Lime’s app-based vehicle access to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate QR code scanning, condition verification, and digital unlocking; (iv) providing help documentation and support materials instructing users on the process of unlocking and riding Lime vehicles; and (v) encouraging users through notifications, emails, and promotional communications to access and ride Lime vehicles using the infringing system. Lime took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its digital access system.

69. By engaging in the conduct described herein, Lime has caused injury to Skeleton Key, and Skeleton Key has been damaged and continues to be damaged as a result thereof and Lime is thus liable to Skeleton Key for infringement of the ’783 Patent, pursuant to 35 U.S.C. § 271.

70. As a direct and proximate result of Lime’s infringement of the ’783 Patent, Skeleton Key has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Skeleton Key for Lime’s past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

71. In addition, the infringing acts and practices of Lime have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and

irreparable harm and damage to Skeleton Key for which there is no adequate remedy at law, and for which Skeleton Key is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

72. Lime has had actual knowledge of the ’783 Patent at least as of the date when it was notified of the filing of this action. By the time of trial, Lime will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the ’783 Patent. Skeleton Key alleges that Lime’s post-filing infringement is willful.

73. Skeleton Key has been damaged as a result of the infringing conduct by Lime alleged above. Thus, Lime is liable to Skeleton Key in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

74. Plaintiff hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring that Lime has directly infringed and induced infringement of, and continues to directly infringe and induce infringement of, U.S. Patent Nos. 9,367,865; 11,783,647; and 12,223,783;

B. Awarding damages to Skeleton Key in an amount no less than a reasonable royalty for Defendant’s direct infringement, induced infringement, and contributory infringement of U.S. Patent Nos. 9,367,865; 11,783,647; and 12,223,783, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

C. Awarding enhanced damages up to three times the amount of compensatory damages pursuant to 35 U.S.C. § 284 based on Lime's willful infringement of the Skeleton Key Asserted Patents;

D. Awarding injunctive relief pursuant to 35 U.S.C. § 283 enjoining Lime from practicing claims of any of U.S. Patent Nos. 9,367,865; 11,783,647; and 12,223,783;

E. Awarding Skeleton Key its attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

F. Awarding Skeleton Key its costs incurred in this action; and

G. Awarding all other relief that the Court deems just and proper.

Dated: August 17, 2026

Respectfully submitted,

By: */s/ Mark D. Siegmund*
Mark D. Siegmund
Texas Bar No. 24117055
msiegmund@cjsjlaw.com
"Grace" Shuya Yang
Texas Bar No. 24144144
gyang@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES P.C.**
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509

Jack Shaw (admitted in this District)
California Bar No. 309382
jshaw@cjsjlaw.com
Ryan Loveless
Texas Bar No. 24036997
rloveless@cjsjlaw.com
William D. Ellerman
Texas Bar No. 24007151
wellerman@cjsjlaw.com
Ari Rafilson
Texas Bar No. 24060456
arafilson@cjsjlaw.com
Shaun Gregory (admission pending)
Virginia Bar No. 86349
sgregory@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES P.C.**
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Tel: (972) 987-0709
Fax: (866) 627-3509

**Attorneys for Plaintiff**
**Skeleton Key Security Systems, Inc.**